# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DONALD PACKHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-cv-237-JPG |
| | ) | |
| T.G. WERLICH, | ) | |
| POLLMAN, | ) | |
| MILLS, | ) | |
| J. TARASUIK, | ) | |
| KEVIN MCCARTHY, | | |
| and DR. F. AHMED, | | |
| | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Donald Packham, an inmate of the Federal Bureau of Prisons ("BOP") who is currently incarcerated at Greenville Federal Correctional Institute ("Greenville"), brings this action for deprivations of his constitutional rights by persons acting under the color of federal authority that allegedly occurred at Greenville. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In the Complaint, Plaintiff alleges Defendants delayed treatment of his ankle/foot injury. He asserts claims against the Defendants under the Eighth Amendment. Plaintiff seeks monetary damages.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

1

money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Plaintiff makes the following allegations: Plaintiff injured his left ankle/foot on June 5, 2016 while in the yard and reported the injury the next day to RN Paul Kelly. (Doc. 1, p. 13). Kelly noted swelling and bruising and instructed Plaintiff to elevate and ice the injury. (*Id*.). J. Tarasuik and Dr. F. Ahmed co-signed Kelly's report but did not see Plaintiff. (*Id.*). As of June 15, 2016, Plaintiff was still experiencing pain and a correctional officer sent him to the healthcare unit where he was again seen by RN Kelly. RN Kelly spoke with Physician Assistant ("PA") Mills about his injury and told Plaintiff that PA Mills would call him to the healthcare unit for a review of his injury. (*Id*.). Plaintiff did not see PA Mills until July 1, 2016. He was sent for x-rays and a CT scan which confirmed a fracture of the left ankle/foot. (*Id*.). PA Mills provided Plaintiff with crutches and a boot and instructed Plaintiff not to bear weight on the foot. PA Mills saw Plaintiff again on July 14, 2016 and informed Plaintiff that she had not seen an injury like Plaintiff's and that he would need to see a foot specialist. (*Id*.).

Plaintiff was seen by Dr. Ahmed on July 28, 2016 in the chronic care clinic and Plaintiff informed Ahmed of his injury. Ahmed prescribed him acetaminophen with codeine. (Doc. 1, p. 13). Plaintiff was referred to a foot specialist on September 2, 2016. The assistant to the specialist informed Plaintiff that he had a diabetic charcot foot fracture. (*Id.* at p. 14). Plaintiff did not meet with the specialist, Dr. Kevin McCarthy, until October 17, 2016. At that time, Dr. McCarthy recommended a rigid crow walker boot, which Plaintiff received on October 31, 2016, but recommended against surgery due to the risk of infection and possible amputation. (*Id*.). Although Plaintiff was seen again by Dr. McCarthy in December 2016, he maintained that surgery was not

recommended even though he noted a loss of height in the ankle. Instead, Dr. McCarthy told Plaintiff to let it heal on its own. (*Id*.). Plaintiff was seen again by Dr. McCarthy in March 2017 and at that time, he found Plaintiff's ankle to be unstable and diagnosed him with a dislocation of the tibiotalar joint (the ankle joint) and erosion of the distal tibia (Plaintiff labels this the "distartibia"). Dr. McCarthy determined that surgery was necessary as the fracture had advanced to a complete shatter causing a loss of 1 inch in height to his left ankle/leg. (*Id*. at p. 12). Dr. McCarthy, however, scheduled the surgery for Fall 2017. Plaintiff requested an earlier surgery from PA Mills but was denied. (*Id*. at p. 15).

Plaintiff was later transferred to MCFP Springfield, the federal prison's medical center, for care in May 2017. (Doc. 1, p. 15). At that time, he met with an orthopedic specialist who informed Plaintiff that the damage to his foot was so advanced that an amputation below the knee was recommended and that he would not benefit from reconstructive surgery. The specialist informed Plaintiff that the damage to his foot advanced because of the passage of time since the initial injury, his age, and his diabetes. (*Id*.). He informed Plaintiff that if he had been brought to MCFP Springfield sooner, they could have saved the foot. (*Id*. at p. 12). Plaintiff declined the amputation and he was transferred back to Greenville in September 2017. Plaintiff alleges that his injury is not healing, and he is still in pain as he only receives naproxen for his pain. (*Id*. at p. 16). Plaintiff alleges that if Defendants had not delayed his treatment, the damage to his ankle would be less severe and would not require possible amputation. (*Id*. at p. 11). He also alleges that he should have been kept in MCFP Springfield, rather than Greenville, as Greenville staff has never treated his type of condition before and cannot provide proper care. Plaintiff wrote an administrative remedy regarding the delay in his care on March 1, 2017. (*Id*. at p. 18). T.G. Werlich responded that Plaintiff was receiving care from a specialist. (*Id*. at p. 19).

**Discussion**

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into a single count:

> **Count 1:** **T.G. Werlich, Pollman, PA Mills, J. Tarasuik, Kevin McCarthy, and Dr. F. Ahmed were deliberately indifferent under the Eighth Amendment by delaying treatment for Plaintiff's ankle/foot fracture.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Plaintiff has alleged a viable claim for deliberate indifference against Defendants PA Mills, J. Tarasuik, Kevin McCarthy, and Dr. F. Ahmed. He has alleged that the Defendants were aware of the injury to his ankle/foot but delayed treatment and adopted a wait and see approach, which caused his injury to advance. Plaintiff alleges that he now faces a below the knee amputation as a result of the delay. The Court finds that these allegations state a claim for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v.*

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

*McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective). Thus, Count 1 shall proceed against PA Mills, J. Tarasuik, Kevin McCarthy, and Dr. F. Ahmed.[2]

As to T.G. Werlich, Plaintiff alleges that as warden he was made aware of Plaintiff's injury through Plaintiff's administrative remedy submitted in March 2017. (Doc. 1, p. 7). The administrative remedy attached to the Complaint shows that Werlich responded to the remedy, noting that Plaintiff was receiving care from a specialist. (*Id*. at p. 19). Generally, the denial of a grievance – standing alone – is not enough to violate the United States Constitution. *See*, e.g., *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). Nonetheless, as the Seventh Circuit explained in *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015), an official may be subject to liability if he or she "knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez*, 792 F.3d at 781 (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996). In *Perez*, the Appellate Court concluded that such allegations warranted further review and should not have been dismissed at screening. *Id.* In so holding, the Seventh Circuit explained that discovery might shed light on whether the grievance officials took investigative action or "reasonably relied on the judgment of

---

[2] Plaintiff also alleges that the Defendants were "negligent" in their treatment of Plaintiff's ankle/foot injury. (Doc. 1, p. 16). Negligence does not amount to deliberate indifference. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). While a federal prisoner may recover damages in federal court for personal injury caused by the negligence of a federal employee, such a suit is properly brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. Plaintiff has not checked the box indicating he is seeking to allege an FTCA claim, nor has he named the United States, the only proper Defendant in an FTCA claim, as a Defendant. 28 U.S.C. §2679(b). He has also not alleged that he first presented his claim to the appropriate federal authority. Thus, to the extent Plaintiff seeks to raise a negligence claim, that claim is **DENIED without prejudice.**

medical professionals." *Id*. (citing *Vance v. Peters*, 97 F.3d. 987, 993 (7th Cir. 1996); *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006)).

The same is true here. Plaintiff's allegations that Werlich was aware of his ongoing medical issues present "questions of fact that simply cannot be resolved in the absence of a record." *Id.* Accordingly, Count 1 shall also proceed against Werlich.

However, as to Pollman, Plaintiff has failed to allege any personal involvement. Plaintiff only alleges that Pollman was the medical administrator and her medical staff did not give Plaintiff adequate treatment. Liability under both § 1983 and *Bivens* hinges on personal involvement in a constitutional deprivation. *Ashcroft v. Iqbal*, 556 U.S. at 676 (2009). Government officials may not be held liable for the unconstitutional conduct of their subordinates under either § 1983 or *Bivens* because the doctrine of *respondeat superior* is inapplicable in both contexts. *Id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under § 1983)). As Plaintiff fails to allege any personal involvement by Pollman, she is **DISMISSED without prejudice**.

## Disposition

**IT IS HEREBY ORDERED** that Count 1 shall proceed against T.G. Werlich, PA Mills, J. Tarasuick, Dr. Kevin McCarthy, and Dr. F. Ahmed but is **DISMISSED without prejudice** as to Pollman. The Clerk is **DIRECTED** to terminate Pollman from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants T.G. Werlich, PA Mills, J. Tarasuik, Dr. Kevin McCarthy, and Dr. F. Ahmed: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and

6

Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

The Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 4/26/2019**

<u>s/J. Phil Gilbert</u>
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**